LOVE, SUPERINTENDENT OF BANKS, *v.* WILSON.

(Division A.   January 21, 1935.)

[159 So. 97.   No. 31134.]

(Division A.   April 15, 1935.)

[160 So. 565.   No. 31134.]

Cooper & Thomas, of Indianola, for appellant.

**Moody & Johnson,** of Indianola, for appellee.

**Smith, C. J.,** delivered the opinion of the court on motion.

The grounds of this motion are: (1) No appeal bond has been executed and filed by the appellant; and (2) "the record, including the stenographer's notes, if a part of the record, wholly fails to show any objections or exceptions, by the plaintiff below, to any action of the

trial court on which error can here be assigned and considered by this court."

The first of these grounds is ruled by the opinion in case case of J. S. Love, Supt. of Banks, v. Mississippi Cottonseed Products Company (Miss.), 159 So. 96, this day decided. The second is without merit, and the necessity vel non of objections and exceptions by the appellant in the court below will be for decision when the case is submitted on its merits.

Overruled.

McGowen, J., delivered the opinion of the court.

On December 2, 1930, G. A. Wilson, the appellee, executed a promissory note payable to the Commercial Bank & Trust Company of Drew, Mississippi, or bearer, for the sum of six thousand dollars, bearing interest and due January 1, 1932. This note was executed by him in his office at Greenwood, and Wofford, Manning, Barnes, and Burnett were present, each of whom, at the same time. executed a note of like tenor and effect payable to said bank; these notes were delivered to the bank the following day, and entered on its books as part of its assets. All of the above-named parties, including Wilson, were directors of the bank. It appears that prior to this conference of these directors the bank had sustained a loss in excess of thirty thousand dollars, which was more than its capital stock and surplus; that these directors had on that day, or the day before, reported this fact to J. S. Love, superintendent of banks, at his office in Jackson, Mississippi, and that Love told Wofford and another director that if the five above-named directors would execute their several notes, as above described, he would allow the bank to remain open.

Wilson testified that he executed the note in order to increase the assets of the bank and to carry out the un-

derstanding that Wofford stated he had with Love. He also testified that these directors and he knew the capital stock of the bank was impaired, as did Love, and that they knew if the capital structure of the bank was not strengthened it would be the duty of Love, as superintendent of banks, to close this bank and proceed with its liquidation under the statute. These notes were placed in the bank as assets thereof, and it remained open until the 18th of December, when there were heavy withdrawals by depositors, causing what is commonly known as a "run on the bank," and in that situation the directors by resolution closed the bank and put it in liquidation under the control of the superintendent of banks.

During the interim from December 2d until December 18th, the bank was open for business, receiving deposits and otherwise carrying on the regular business of a bank. G. A. Wilson, Jr., was a stockholder, owning two shares of stock, as well as a director. Wilson's father and business associate and others of the family owned shares of the capital stock of the bank. It is undisputed in the record that the immediate loss to the bank of its capital stock and surplus was occasioned by a loan to J. F. Rogers Cotton Company, and that the notes of these directors were in lieu of the loss on this cotton account, and that Love, superintendent of banks, had requested these directors through Wofford to pay off this cotton loss.

After the bank had been closed and was in liquidation, and after the Wilson note became due, the appellant brought an action at law against Wilson to recover the amount of the note. To this action Wilson pleaded the general issue and two special pleas, one to the effect that the note was without consideration, and the other to the effect that the note in question was a gift to the bank, but could not in law be the subject of a gift, and that the plaintiff had no greater rights in and to said note than the bank

acquired therein. To the latter plea there was replication and issue was joined. At the conclusion of the evidence both parties requested a peremptory instruction. The court refused the one requested by the appellant and granted the one in favor of appellee Wilson. A verdict was rendered by the jury accordingly, and judgment entered, from which Love, superintendent of banks, prosecutes the appeal here.

The precise contention of the appellee here is that an agreement was effected between Love, superintendent of banks, and the named directors, by which the loss on the cotton loan was restored in the manner we have indicated, and that Love agreed that if they did this he would not close the bank, but would permit it to remain open; that the agreement was effected by the execution and delivery of the notes to the superintendent of banks, and that this agreement became an executed contract when the note sued on, with the others, was delivered to Love as superintendent of banks. Appellee further contends that the consideration for the contract was this agreement with Love, who knew that the capital stock had been impaired and a loss sustained by the bank, and that the agreement to allow the bank to remain open on the execution of these notes was an illegal consideration. Under section 3780, Code of 1930, the superintendent of banks is only authorized and empowered to require the stockholders to pay into the bank a sufficient sum to restore its impaired capital or to execute a bond as provided by the statute.

The appellant contends that the agreement with Love was not the contract executed by Wilson, but that the note payable to the bank was the contract; and further contends that Wilson, as a director and stockholder, was interested in the bank remaining open, for if it closed immediate liability as such stockholder would be fastened upon him and his family. It might well be that he con-

sidered himself contingently liable as a director for permitting the loan of more than the capital stock of the bank to one corporation, and therefore he desired, as it was to his interest and likewise the interest of the bank, that it be permitted to continue to do business.

It is quite apparent to us that the contract evidenced by the notes was between the bank and its directors, and the directors received the notes and delivered them to the bank, and that Wilson cannot avoid the effect of his own act. He and the other directors tacitly agreed that they would guarantee and make good the specific loss which had been sustained by the bank. It is presumed that they discharged their duty as directors in the effort to repair the capital stock, and that they were financially interested in the acceptance of the notes by the bank, and their interest as directors and stockholders in the continuance of the business of the bank constituted a sufficient consideration, given by each of them to make good the loss which existed on account of the cotton loan. If they had not made the loss good, and if the capital stock remained impaired and thereby the bank became insolvent, it was the duty of these directors to close the bank and not permit it to open. The officers, agents, and directors of the bank had no right to receive deposits if the bank remained insolvent. The superintendent of banks had no authority to require the directors to keep the doors of the bank open for business. He had authority to close the bank under certain conditions, but the responsibility for keeping the bank open was that of the directors, and when they saw fit to issue and deliver these notes they assumed the liability, and the bank had a right to rely on these notes, as it did for the fifteen or sixteen days in which it did business. All of this, in our judgment, is conclusive that the contract is not illegal, as one made with the superintendent of banks, but as individuals these directors dealt inter sese with and

for the bank, and are bound by their own action. The notes were not illegal. By tacit agreement the directors dealt one with the other. These directors had a powerful motive, as well as adequate consideration for their several promissory notes to the bank.

This question has been fully discussed and the controlling principles herein involved have been settled by the case of Love v. Dampeer, 159 Miss. 430, 132 So. 439, 73 A. L. R. 1376.

The judgment of the court below will be reversed, and a judgment entered here for the appellant for the amount of the note, interest, and attorney fees, as provided for in the note.

Reversed, and judgment here for appellant.